IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND
FOR FRANKLIN COUNTY, FLORIDA

**SARA GREGORY,**

    **Plaintiff,**

v.

**SABER HEALTHCARE GROUP d/b/a ST. JAMES HEALTH AND REHABLITATION CENTER,**

    **Defendant.**

_____/

CASE NO.: 21-CA-
FLA BAR NO.: 0739685

## COMPLAINT

Plaintiff, SARA GREGORY, hereby sues Defendant, SABER HEALTHCARE GROUP d/b/a ST. HAMES HEALTH AND REHABILITATION CENTER and alleges:

### NATURE OF THE ACTION

1. This is an action brought under 42 U.S.C. §12101 et seq. and §448.102 et seq., Florida Statutes.

2. This action involves claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, SARA GREGORY has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her disability status, and she was retaliated against after reporting Defendant's unlawful employment practices.

4. At all times pertinent hereto, Defendant, SABER HEALTHCARE GROUP d/b/a ST. JAMES HEALTH AND REHABILITATION CENTER has been organized and existing

under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and received her right to sue notice on June 25, 2021. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, who is disabled, perceived to be disabled and/or has a record of having an impairment, began her employment with Defendant on or about November 14, 2018 and held the positions Nurse Supervisor and Charge Nurse at the time of her mistreatment.

7. Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her disability, and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Administrator Shanika Mathieu ("Mathieu"), Human Resources Officer, Khrystal Anderson ("Anderson"), Director of Nursing, Tabitha Ray ("Ray"), and Direct Supervisor Tristen Foley ("Foley").

9. Plaintiff is currently employed by Defendant and has suffered mistreatment in the form of verbal abuse, bullying, threats, and demotion since November 30, 2018

10. On November 30, 2018, Plaintiff was directed by Ray to lie on a wound assessment of a patient, and Plaintiff refused. Plaintiff told Ray not to ask her to lie for Defendant again as the action requested constituted fraud.

11. On December 28, 2018, Plaintiff reported an inappropriate conversation between a patient and a nurse to Mathieu. Plaintiff explained that the nurse bribed the patient that if they took their medication, she would let the patient grope her. Upon bringing this matter to the attention of Mathieu, Mathieu laughed it off stating that that was just the nurse's sense of humor. Plaintiff asked Mathieu to handle the matter regardless, and Mathieu agreed. Mathieu never addressed the nurse's behavior.

12. On January 22, 2019, Ray told a group of nurses she supervises, including Plaintiff, that she would pay them if they completed her online English course for her. One of the nurses politely refused, and Ray shouted at the nurse with various expletives that the nurse was worthless, unliked by everyone at the facility and ordered her to "sit the f*** down and shut the f*** up." When the nurse excused herself from the room, Plaintiff defended the nurse and promptly reported the incident to Mathieu. Rather than taking immediate action for Ray, the Director of Nursing's, verbal abuse, she told Plaintiff to "watch her back" because those employed at the facility do not like new people. She also stated that Plaintiff was making herself a target by reporting Ray's behavior, and that Plaintiff should "fall in or fall out." Plaintiff told Ray that she would begin looking for employment elsewhere. Mathieu then requested Plaintiff to help Defendant finalize its Joint Commission on Accreditation of Healthcare Organizations (JCAHO) certification.

13. Over the next few months, Plaintiff was asked to come in to work at odd hours in the middle of the night to check on the night shift.

3

14. On April 30, 2019, Plaintiff was made aware of an opening for a Floor Nurse position, a position at a lower rank than her then Unit Manager position. Plaintiff asked if she could apply for this position because she was the sole care-giver for her mother and step-father. Ray indicated that the position was not open to RNs, and then informed Plaintiff that it had already been filed by Foley. Plaintiff, unable to secure employment at the same level elsewhere, agreed to stay as the Unit Manager with Defendant.

15. On June 11, 2019, Plaintiff attempted to file an incident report on behalf of a patient who was injured and in need of hospitalization. Plaintiff was prevented from doing so by Ray who stated that they did not need that report in the system. The Agency for Health Care Administration was notified of the incident. Plaintiff was, again, asked to falsify documentation regarding the injury, but Plaintiff refused.

16. After the incident, Plaintiff was called to Ray's office. Ray accused of not being a "team player." Ray also accused Plaintiff of a groundless and unrelated matters, i.e., starting a petition to "overthrow" Ray. Plaintiff informed Ray that the rumor was solely a rumor and that she would not lie for Defendant.

17. In September 2019, Plaintiff underwent an operation after learning she was a carrier of the BRCA 1 gene mutation. Plaintiff had requested time off for this procedure and her recovery on July 1, 2019. Plaintiff was out on short-term leave.

18. Leading up to her procedure, Plaintiff was accused by multiple staff members of "faking" her cancer, trying to abuse her leave, and trying to get attention.

19. Upon returning to work on October 21, 2019, Plaintiff learned that she had been demoted to a Floor Nurse position while out on short-term leave. Her former Unit Manager position was filled with someone else by the time Plaintiff returned to work. Plaintiff was not

informed of such demotion prior to its occurrence. The Floor Nurse position required physical exertion beyond what Plaintiff was cleared to do. Plaintiff's only options were to remain in this physically demanding role of a Floor Nurse, or to quit. Plaintiff chose to work the Floor Nurse position, and requested her doctor send a restriction-free clearance note to Defendant so that she was not terminated for failing to perform the physical demands required by the Floor Nurse position.

20. Plaintiff's return to work prevented her from continuing to receive her disability benefits. Around that time, Plaintiff reported disability discrimination upwards within the corporate structure of the Defendant, to no avail.

21. Plaintiff repeatedly ripped her stitches while working which resulted in bleeding through her uniform. Plaintiff was not cared for by her employer, but was instead mocked and insulted. Ray told Plaintiff's coworkers that Plaintiff underwent a boob job and a tummy tuck.

22. Plaintiff's Station 2 Supervisor laughed at Plaintiff as she bled and mockingly asked if Plaintiff was lactating. Coworkers were told and believed that Plaintiff was faking having cancer.

23. Plaintiff was harassed daily upon her return by Foley, who replaced Plaintiff thereby becoming Plaintiff's supervisor. Each shift from then on, Foley would follow behind Plaintiff wherever Plaintiff went clapping aggressively and yelling at Plaintiff to hurry up and move faster.

24. On October 29, 2019, Plaintiff received a text from a co-worker who was present for a discussion between Ray, Mathieu, and Anderson. The text indicated that Ray, Mathieu and Anderson were mocking Plaintiff and indicating that they were sick of Plaintiff working for Defendant. The three stated that they would make Plaintiff's work life so miserable that Plaintiff would eventually be forced to quit because they knew that firing her would lead to a lawsuit.

25. Plaintiff underwent a second and final operation in February 2020.

26. While on leave, Anderson repeatedly contacted Plaintiff's surgeon seeking HIPAA protected information including Plaintiff's specific diagnoses. Plaintiff's surgeon explained to Plaintiff that it was clear Anderson was not fond of Plaintiff, and that he refused to be harassed by her.

27. Plaintiff never gave Anderson her surgeon's contact information and never gave Anderson, or any of her supervisors, permission to contact her surgeon.

28. Plaintiff returned to work in March 2020 after clarifying with Ray that she was not cleared to lift more than twenty-five (25) lbs. Ray asked Plaintiff if she could get a doctor's note clearing her without restrictions, but that she would not require Plaintiff to lift heavy objects. Plaintiff refused citing it as unethical. Plaintiff was required to lift objects as heavy as fifty (50) lbs. despite not being cleared to do so.

29. On April 7, 2020, Plaintiff had a discussion with Ray about the facilities COVID protocols. Ray stated that no patient would die from COVID because they would not be tested for COVID. Plaintiff told Ray that failure to test and report was fraudulent. Ray rolled her eyes and walked away.

30. Plaintiff was later approached by a member of management who advised Plaintiff to quit because Ray, Anderson, and Foley hated Plaintiff and were coming after her. Plaintiff texted this employee later that evening and asked if the employee could explain why Ray, Anderson, and Foley hated her. The staff member responded that she "want[ed] to" but that she was "scared of retaliation."

31. On April 9, 2020 Plaintiff was changing the toner cartridge to the fax machine when Ms. Ray yelled from down the hall the following offensive phrases: "Hey hoe!" "Hey hoochie

6

momma!", and "hey hoebag!" Plaintiff informed that the words were offensive and inappropriate in a workspace.

32. On April 15, 2020, Plaintiff was instructed by Foley to give a patient with a gastrointestinal bleed who, if they received such injection, would be susceptible to having a dangerous reaction. Plaintiff sought clarification from Foley as to whether the patient's doctor knew about the gastrointestinal bleed. Foley pushed back on Plaintiff for questioning her, and ordered her to go get the medication for the injection.

33. Plaintiff determined that the medication room did not have the medication in stick, so she sought it from a different location in the facility. On her way to secure the medication, she overheard Foley speaking to another coworker that Plaintiff has no right to question her, and that "the little cancer chick thinks she knows everything."

34. Plaintiff confronted Foley via text for her comments. Plaintiff then received an email from Anderson stating that the situation between Plaintiff and Foley was a misunderstanding and that they would not be investigating the matter further. Plaintiff explained that she was never given the opportunity to share her side of the story. Foley indicated that she did not need a statement from Plaintiff.

35. After the email exchange, Plaintiff was instructed to report to Foley's office where Foley and Ray were present. Plaintiff was instructed to never question Foley again and that if she didn't like it, she could quit. Plaintiff, again, indicated that she was never able to give a statement before the investigation concluded. Ray told Plaintiff to "deal with it and do her job."

36. Through Plaintiff's near two years of employment with Defendant, she experienced verbal abuse, was forced to perform physical activities she was not cleared to do by her doctor, was demoted while out on medical leave and after she reported and/or objected to violations of

7

law, rules and/or regulations, and was bullied in an attempt to get her to resign. Plaintiff was repeatedly asked to perform fraudulent and unethical actions on the job, and was berated in person and over text and Facebook messages by Ray, Anderson, and Foley when she refused.

37. Plaintiff's cancer treatment was dismissed by Ray, Anderson, and Foley and she was falsely accused of faking her diagnosis.

38. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## DISABILITY DISCRIMINATION

39. Paragraphs 1 through 38 are realleged and incorporated herein by reference.

40. This is an action against Defendant for disability discrimination.

41. Plaintiff has been the victim of discrimination on the basis of her disability or perceived disability. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

42. Plaintiff underwent two surgeries after being diagnosed with the BRCA gene. After returning from the first procedure, Plaintiff learned that she had been demoted and replaced. Plaintiff was told she could either take the demotion or quit.

43. After Plaintiff's second procedure, Plaintiff was accused and harassed by Anderson, Ray, and Foley of faking cancer, attempting to falsely take advantage of leave, and called offensive terms relating to her post-surgery appearance, including "cancer chick."

44. Plaintiff was bullied and punished, in part, for having cancer.

45. Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, as well as its failure to engage in the interactive process with Plaintiff, which adversely

8

affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

46. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

47. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

48. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or her record of having an impairment under the laws enumerated herein.

49. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

## COUNT II
## RETALIATION

50. Paragraphs 1 through 38 are realleged and incorporated herein by reference.

51. Defendant is an employer as that term is used under the applicable statutes referenced above.

9

52. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting her under the laws set forth above.

53. The foregoing unlawful actions by Defendant were purposeful.

54. Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment on various occasions. When Plaintiff refused to falsify a procedure, Foley with Defendant and was the victim of retaliation, thereafter, as related in part above.

55. Plaintiff's mistreatment only worsened every time she attempted to report or complain about the name-calling and bullying.

56. Plaintiff is a member of a protected class because she reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

57. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and to injunctive relief.

### COUNT III
### PRIVATE WHISTLEBLOWER RETALIATION

58. Paragraphs 1 through 38 are incorporated herein by reference.

59. This is an action brought under §448.101, et seq., Florida Statutes.

60. As set forth in greater detail above, during the course of Plaintiff's employment, Plaintiff objected to certain practices of Defendant that were in actual or suspected violation of laws, rules and/or regulations.

61. As a result of Plaintiff' objections, Defendant fired Plaintiff as described more fully above.

62. Plaintiff was terminated because she engaged in protected behavior. Specifically, Plaintiff objected to, or refused to participate in, any activity, policy, or practice of Defendant which is in actual or suspected violation of a law, rule, or regulation and/or reported the violation and gave Defendant an opportunity to correct the problem. Instead of correcting the problem, it got worse, and Plaintiff was fired for said reporting.

63. The disclosures made by Plaintiff are protected under §448.102, Florida Statutes.

64. As a direct and proximate cause of Plaintiff's participation in the Whistle Blowing activities identified herein, Plaintiff has been damaged, which damages include but are not limited to lost wages and other tangible and intangible damages and every other kind of damage allowed by law. Plaintiff has also suffered emotional pain and suffering damages and other intangible damages that continue today.

65. Plaintiff is entitled to injunctive/equitable relief and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

11

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 15th day of September 2021.

    Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF

|  | IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT, IN AND FOR FRANKLIN COUNTY, FLORIDA |
|---|---|

**SARA GREGORY,**　　　　　　　　　　CASE NO.: 21-CA-45

　　　　**Plaintiff,**

**v.**

**SABER HEALTHCARE GROUP d/b/a ST. JAMES HEALTH AND REHABLITATION CENTER,**

　　　　**Defendant.**
_____/

## WAIVER OF SERVICE OF PROCESS

On behalf of Defendant, SABER HEALTHCARE GROUP d/b/a ST. JAMES HEALTH AND REHABLITATION ("Defendant"),[1] I acknowledge receipt of your request that Defendant waive service of process in Sara Gregory v. Saber Healthcare Group d/b/a St. James Health and Rehabilitation; Case No. 21-CA-45, Franklin County Circuit Court. I acknowledge receipt of a copy of the complaint, two copies of this waiver, the Uniform Standing Order and a means by which I can return the signed waiver to you without cost to me.

On behalf of Defendant, SABER HEALTHCARE GROUP d/b/a ST. JAMES HEALTH AND REHABLITATION, I agree to save the cost of service of process and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Fla. R. Civ. P. 1.070.

If I am not the Defendant to whom the notice of lawsuit and waiver of service of process was sent, I declare that my relationship to the entity or person to whom the notice was sent and my

---

[1] Plaintiff's employer, and properly named defendant in this matter, was AHI Holdings, LLC. The defendant presently named in this lawsuit, in addition to containing a misspelling, should be dismissed.

authority to accept service on behalf of such person or entity is as follows: I am an attorney representing Defendant, SABER HEALTHCARE GROUP d/b/a ST. JAMES HEALTH AND REHABLITATION, and have authority to accept service.

Defendant, SABER HEALTHCARE GROUP d/b/a ST. JAMES HEALTH AND REHABLITATION, acknowledges that it will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for any objections based on a defect in the summons or in the service of the summons.

On behalf of Defendant, SABER HEALTHCARE GROUP d/b/a ST. JAMES HEALTH AND REHABLITATION, I understand that a judgment may be entered against Defendant, if a written response is not served upon you within 60 days from the date I agreed to accept service, which was September 22, 2021.

DATED this 7th of October, 2021.

> Respectfully submitted,
>
> JACKSON LEWIS P.C.
> 501 Riverside Avenue, Suite 902
> Jacksonville, FL   32202
> Telephone: (904) 638-2667
> Facsimile: (904) 638-2656
>
> By: */s/ B. Tyler White*
> B. Tyler White
> Florida Bar No. 038213
> Tyler.White@jacksonlewis.com
> Ross D. Vickers
> Florida Bar No. 121717
> Ross.Vickers@jacksonlewis.com
> Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of October, 2021, this waiver was served by electronic mail to the following attorney of record for Plaintiff:

Marie A. Mattox, Esquire
MARIE A. MATTOX, P. A.
203 N. Gadsden Street
Tallahassee, FL 32301
marie@mattoxlaw.com
secondary emails:
marlene@mattoxlaw.com

/s/ B. Tyler White
B. Tyler White

4824-8516-0190, v. 1

3